UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RAMON ALVARADO, JR.,

        **Plaintiff,**

v.                                        Case No. 21-CV-184

JOSEPH BEAHM, *et al.*,

        **Defendants.**

---

### DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Ramon Alvarado, Jr., who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Alvarado brings an Eighth Amendment claim against defendant Kyle Demers, alleging that Demers strip-searched him for the purpose of humiliating him; a Fourth Amendment claim against Demers for an unreasonable strip-search; and an Eighth Amendment claim against Joseph Beahm, Lucas Billie, Nicholas Erdmann, Zachary Keske, Lisa Stoffel, and Captain Kyle Tritt for failing to intervene to stop the strip-search.

The defendants filed a motion for summary judgment. Alvarado has responded in opposition. For the reasons stated below, the court grants the defendants' motion for summary judgment.

### PRELIMINARY MATTERS

In his materials in response to the defendants' motion for summary judgment, Alvarado also includes a motion for sanctions and asks for an entry of default judgment. (Docket # 77 at 7-10.) He asserts that the defendants did not provide him a copy of DAI

Policy 306.17.02, which concerns strip-search procedure and policy. On April 15, 2024, the Court required the defendants make the policy available for viewing through the litigation coordinator at Alvarado's institution. (Docket # 83.) The defendants, in response to the motion, also note that Alvarado has had access to the policy via the litigation coordinator since December 22, 2021. (Docket # 80 at 2.) In reviewing his response materials, Alvarado appears to have been able to cite from and utilize the information contained in that policy even though he could not retain a copy for security reasons. His motion for sanctions is denied.

Also in his response materials, Alvarado waives the Fourth Amendment claim. (Docket # 77 at 10.) As such, summary judgment is granted in favor of the defendants on the Fourth Amendment claim, and it is dismissed. The court's analysis will focus on the Eighth Amendment claims.

## FACTS

At all times relevant, Alvarado was incarcerated at Waupun Correctional Institution. (Docket # 62, ¶ 1.) On December 9, 2017, Alvarado told a non-defendant officer that he was feeling suicidal and needed to go on observation status. (Docket # 79, ¶ 1.) He was then put on observation status. (*Id.*, ¶ 2.) Alvarado states that during his transfer to observation status on December 9, through to his cell extraction on December 12, it would have been impossible for him to acquire contraband. (*Id.*, ¶¶ 2–22.)

On December 12, 2017, non-defendant Dr. Kristina DeBlanc performed a psychological examination on Alvarado and determined that he no longer needed to be on observation status. (Docket # 79, ¶ 23.) At that point, Tritt and Demers came to escort Alvarado from observation status, but Alvarado refused to leave the observation cell. (Docket

# 62, ¶¶ 7–8.) Because Alvarado refused to leave the observation cell, Tritt determined that a cell extraction team was necessary and sought authority from the Warden. (*Id.*, ¶¶ 9–10.) Once the cell extraction team was assembled, Tritt ordered Alvarado to place his hands through the trap so he could secure him for the escort. (*Id.*, ¶ 11.) It is undisputed that Alvarado refused to comply. (*Id.*, ¶ 12.) Both Tritt and Demers issued several orders for Alvarado to be secured for the escort, and Alvarado refused. (*Id.*, ¶¶ 13–14.) At that point, Tritt threated to use OC spray to gain compliance, and when Alvarado still did not comply, Tritt sprayed him with the OC spray. (*Id.*, ¶¶ 15–16.) Once Alvarado was sprayed with the OC spray, he complied with the order to be restrained. (*Id.*, ¶ 16.)

Once Alvarado was removed from his cell, it is undisputed that Alvarado continued to yell and threaten to kill staff. (Docket # 61, ¶ 17.) However, Alvarado notes that he was not threatening the officers with imminent violence but was only threatening to harm or kill them once he was released from prison after winning his criminal appeal. (Docket # 79, ¶ 38.) Tritt decided that because Alvarado was non-compliant and threatening staff, thus posing a security risk, a staff-assisted strip-search would be conducted instead of allowing Alvarado to strip himself. (Docket # 62, ¶¶ 18–21.) Alvarado insisted that he could strip himself and did not need a staff-assisted strip-search. Tritt, however, refused to allow him to strip himself because he was concerned that Alvarado may harm staff if unrestrained or that he had contraband he could use to harm staff. (*Id.*; Docket # 79, ¶¶ 40–41.)

Demers told Alvarado that he would be performing the search, and Alvarado responded by threatening Demers' life. (Docket # 62, ¶ 24.) Demers used dura sheers to remove Alvarado's clothing and proceeded to verbalize each step of the search. (*Id.*, ¶ 25.) Demers searched Alvarado's mouth, hair, ears, and armpits. (*Id.*, ¶ 26.) Demers states he then

3

"used the backside of his bladed hands to lift Alvarado's scrotum and separate his buttocks." (*Id.*) Alvarado asserts that Demers "grab[bed] my penis and testicles and squeeze[d], pinche[d], fondle[d], and rub[bed] my penis and testicles." (Docket # 79, ¶ 47.) Alvarado also states that Demers did not use the backside of his hands to search his scrotum or separate his buttocks. (*Id.*, ¶ 48.) Alvarado also notes that defendant Stoffel, a woman, was holding the camera filming the search. (*Id.*, ¶ 50.) Alvarado was naked for several minutes, and he alleges that during the search, Beahm and Tritt were cracking jokes, and other observers, including Dr. DeBlanc, were laughing at him. (*Id.*, ¶¶ 50–51.)

Throughout the search, the defendants assert that Alvarado was yelling threats to harm or kill the officers. (Docket # 62, ¶ 29.) The search did not yield any contraband. (*Id.*) After the strip search, Alvarado was moved to a new cell. (*Id.*, ¶ 35.) While he was being escorted to the new cell, Alvarado kicked Demers in the knee. (*Id.*, ¶ 36.)

There is video of the cell extraction and the strip-search with audio. (Docket # 65-1.) The video corroborates the defendants' version of events. Alvarado is extremely agitated during the entire time, yelling threats, and generally acting non-compliant. At one point, Alvarado states that he is going to kill the officers when he gets released; he also threatens to harm or kill the officers generally on several occasions. The video shows that Demers conducts the strip-search efficiently and professionally. There is no evidence of any of the officers or staff laughing or cracking jokes, as Alvarado states. There is also no evidence that Demers fondles Alvarado. The video shows that Alvarado remains agitated after the search ends.

4

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Alvarado claims that Demers violated his Eighth Amendment rights because the strip-search he conducted was intended to harass and humiliate him. To demonstrate that a strip-search is unconstitutional, a plaintiff must "show that the searches were conducted in a harassing manner intended to humiliate and cause psychological harm." *Mays v. Springborn*, 575 F.3d 643, 649–50 (7th Cir. 2009). In other words, the officers' conduct must be "unrelated to institutional security." *Courtney v. Devore*, 595 Fed. App'x 618, 619–20 (7th Cir. 2014).

Alvarado argues that the strip-search was intended to humiliate him and was not for security purposes for several reasons. First, he states that his movement and activities between December 9 and December 12 were such that it was clear he could not have had access to contraband. Second, Alvarado argues that Tritt stated he was searching Alvarado because he was non-compliant when ordered out of his cell—which is not a security reason. Finally, he asserts that the search was not for security purposes because he was naked for more than 4 minutes, officers were cracking jokes and laughing at him, a woman officer was present during the search, and the search did not comply with the Division of Adult Institutions (DAI) policy.

Here, the video directly contradicts some of Alvarado's claims. The video contains no evidence of jokes or jeers. It shows that Demers conducted the search in a professional and perfunctory manner. "Where opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 327, 376 (2007).

6

Alvarado's other arguments also fail. Alvarado argues that there was no security risk to justify a staff-assisted search. This argument does not consider that Alvarado's noncompliance created a security challenge warranting a staff-assisted search for the safety of the staff and Alvarado himself. Even if this was not a valid reason for a search under the DAI policy, "[s]ection 1983 protects against 'constitutional violations, not violations of . . . departmental regulation and . . . practices[.]'" *Estate of Simpson v. Gorbett,* 863 F.3d 740, 746 (7th Cir. 2017) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)).

Additionally, the mere presence of a female guard also is not evidence of a constitutional violation; there needs to be other evidence that her presence was there for the purposes of humiliation. *Courtney*, 595 Fed. App'x at 619–20. Also, even if Tritt had no reason to believe that Alvarado had contraband, there were other legitimate security reasons to engage in a staff-assisted search as explained above. On the totality of the record, no reasonable juror could conclude that Demers conducted the search with the intent to humiliate Alvarado. Summary judgment is granted in Demers' favor.

Because the Court finds in Demers' favor on the Eighth Amendment claim, the Court also finds in the remaining defendants' favor on the failure to intervene claim. "In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). Because the court found no constitutional violation for the underlying claim, it grants summary judgment in the defendants' favor on the failure to intervene claim.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted. The defendants also argue that they are entitled to qualified immunity, but because the Court

7

granted summary judgment in their favor on the merits, it does not need to address the qualified immunity arguments. Because there are no remaining claims, the case is dismissed.

### ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (Docket # 60) is **GRANTED**.

**IT IS FURTHER ORDERED** that Alvarado's motion for sanctions (Docket # 77) is **DENIED**.

**IT IS FURTHER ORDERED** that the case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 9th day of July, 2024.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge